IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JUANITA PHILLIPS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-20-390-RAW-KEW |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Juanita Phillips requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-four years old at the time of the administrative hearing (Tr. 42). She completed tenth grade and has worked as a travel plaza cashier and supervisor (Tr. 76-77, 229). The claimant alleges inability to work since August 25, 2018, due to bilateral shoulder pain, thoracic and lumbar back pain, anxiety, panic disorder, PTSD, permanent nerve damage in both feet, osteoarthritis, GERD, carpal tunnel syndrome in the right wrist, and pain in both legs and hips (Tr. 228).

## Procedural History

On October 8, 2018, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The application was denied. ALJ Glenn A. Neel conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 10, 2020 (Tr. 15-25). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

ALJ Neel made his decision at step four of the sequential evaluation. At step two, he determined that the claimant had the severe impairments of osteoarthritis/degenerative

disc disease of the lumbar and cervical spine, generalized osteoarthritis, right shoulder osteoarthritis, bursitis and tendonitis, right carpal tunnel syndrome and lateral epicondylitis, right knee bone spurring, hypertension, obesity, and a history of right-sided axillary bypass, as well as the nonsevere impairments of vision loss, anxiety disorder, panic disorder, and PTSD (Tr. 17-18). He found at step three that the claimant did not meet a Listing. At step four, he found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk at least six hours in an eight-hour workday, and sit at least six hours in an eight-hour workday, but that she could only occasionally climb, balance, stoop, kneel, crouch, and crawl, and that she could frequently reach, handle, and finger bilaterally (Tr. 20). The ALJ then concluded that the claimant was not disabled because she could return to her past relevant work as a cashier (Tr. 24).

## Review

The claimant contends[3] that the ALJ erred by failing to properly evaluate the evidence as to her impairments, both physical and mental, and therefore erred in finding she could return to her past relevant as a cashier. More specifically, she contends the ALJ erred in evaluating evidence related to (i) her lifting/carrying restrictions, (ii) her upper extremity limitations related to shoulder impairments and carpal tunnel syndrome, and

---

[3] The undersigned Magistrate Judge notes that Plaintiff's Counsel has failed to comply with Local Civ. R. 7.1(c) in submitting her Opening Brief but nevertheless proceeds on the merits of the arguments raised. Continued failure to comply may result in this Court's consideration of only that portion of the brief in compliance with the Rules.

(iii) her mental impairments, and further erred in evaluating (iv) the consistency of her statements in light of the evidence. The undersigned Magistrate Judge agrees with the claimant's contention as to some of her physical impairments, and the decision of the Commissioner should therefore be reversed.

The medical evidence as to her physical impairments demonstrates that even prior to the alleged disability onset date of August 25, 2018, she reported complaints with carpal tunnel syndrome with positive Tinel's signs on the right, congenital hypoplasia, right shoulder impairment, and back pain with limited range of motion (Tr. 330, 453). Imaging studies from 2016 and 2017 revealed moderate degenerative disc disease at C5-C7 (Tr. 453, 529). The claimant underwent an axillary bypass in September 2017, and in January 2018 even with improvement was given a ten-pound lifting limitation, with no overhead lifting and no strenuous activities, upon being authorized for work (Tr. 343, 355, 502). The claimant was also assessed with facet arthropathy of the L4-5 and L5-S1, as well as artherosclerotic changes of the aorta in the lumbosacral spine (Tr. 515). And in August 2018, she was noted to have decreased range of motion of the right upper extremity with limited external/internal rotation (Tr. 365).

The claimant had left shoulder pain as far back as 2009, and underwent a left shoulder arthroscopy in 2010, which was followed by physical therapy (Tr. 556-558, 680). Physical therapy notes indicate the claimant began reporting right shoulder pain in June 2011 (Tr. 667). Further complaints right shoulder pain in 2016 led to an x-ray that revealed calcific tendinosis of the rotator cuff and mild acromioclavicular joint osteoarthritis (Tr. 531). In September 2018, an MRI of the right shoulder revealed a partial tear, tendinosis,

moderate osteoarthritis, and bursitis (Tr. 507-508). In February 2019, the claimant underwent a right shoulder rotator cuff repair and AC resection (Tr. 813). Following the rotator cuff repair, the claimant underwent physical therapy for her right shoulder. By her discharge in May 2019, she reported 75% improvement and was practicing movement with five to ten pounds weights to help her get prepared for putting groceries and household items away (which was sufficient for discharge with no plans for an increased weight load) (Tr. 974).

On February 8, 2019, Dr. Christopher Sudduth, M.D., completed a physical examination of the claimant. (Tr. 764-771). He found that the claimant was able to lift, carry, and handle personal belongings; could rise from sitting without assistance and had no difficulty getting up and down from the exam table; had normal tandem walking and could dress and undress adequately well; but that she was unable to squat and rise from that position or walk on heels and toes. Her blood pressure was elevated, and he further noted that she had decreased range of motion of her right shoulder and lumbar spine with lumbar spine pain on range of motion, as well as positive straight leg raise test bilaterally (Tr 767-771).

As to her mental impairments, the claimant received general primary care treatment with Dr. James Brett Guthrie for both her anxiety disorder and her physical impairments (Tr. 713). Treatment notes reflect her anxiety was largely well controlled on medication following the alleged disability onset date, although she reported increased stress in August 2019 after her husband experienced complications from a surgery, and it was back to well controlled in September 2019 (*e. g.*, Tr. 955, 1007, 1011). Dr. Guthrie also regularly noted

the claimant's back pain, neck pain, muscular pain, range of motion limitations, and positive straight leg raise tests in his treatment notes (Tr. 694-716, 918-956,1007-1034).

On October 24, 2018, he completed a "Mental Functional Assessment Questionnaire," in which he indicated that she had a fear of crowds and experienced chest pain and shortness of breathing with her anxiety disorder, and that she was unable to cope with stress and unable to tolerate crowds (Tr. 692). On April 12, 2019, Dr. Guthrie completed a physical RFC assessment, in which he indicated that she had an anxiety disorder and lumbar degenerative disc disease, with a poor prognosis (Tr. 912). He estimated that she could sit for twenty minutes at a time and stand for fifteen minutes at a time; that she could sit and stand each for up to three hours in an eight-hour workday, and walk less than two hours in an eight-hour workday; and that she would need to lie down four hours in an eight-hour workday (Tr. 912). He further marked that she would need to shift from sitting to standing/walking, and that she would need unscheduled breaks every two hours (Tr. 913). He also indicated she could only occasionally lift up to ten pounds, and never more than that, but that she had no significant limitations with repetitive reaching, handling, and fingering (Tr. 913). Finally, he estimated that she would be absent from work four or more days per month (Tr. 913).

State reviewing physicians determined initially and upon reconsideration that the claimant could perform light work with limited light overhead reaching (Tr. 97-99, 114-116). Neither addressed the specific lifting restrictions contained in the record. As to her mental impairments, reviewing physicians found that the claimant had no more than mild

limitations to her global functioning and therefore that her mental impairments were not severe (Tr. 95-96).

In his written opinion at step four, the ALJ summarized the claimant's hearing testimony, as well as the medical evidence in the record (Tr. 21-24). As for her physical impairments, the ALJ noted the claimant's right shoulder pain, arthroscopy, and subsequent physical therapy sessions, but did not mention that she was released after she had *worked up* to a five- to ten-pound lifting ability (Tr. 22). Nor did he mention her 10-pound lifting limitation prior to her alleged onset date due to her congenital hypoplasia (Tr. 21-23, 343). Furthermore, the ALJ found that the claimant's statements regarding her impairments were not consistent with medical evidence and with her testimony from the administrative hearing. The ALJ stated that unspecified testimony from the claimant at the hearing showed significant improvement in response to treatment, and few objective findings to support a claim of substantial functional limitations (Tr. 21). As for the opinion evidence, the ALJ summarized Dr. Sudduth's physical examination findings, then found that the state reviewing physician opinions were persuasive, asserting that they were consistent with Dr. Sudduth's examination (Tr. 23). He found that Dr. Guthrie's opinion was neither consistent with nor supported by the evidence, and that it was not persuasive because Dr. Guthrie indicated that the impairments went back to 2017 even though she was working full time then (Tr. 24). The ALJ then concluded that the claimant could perform her past relevant work as a cashier and that she was therefore not disabled (Tr. 24-25).

The claimant contends that the ALJ's RFC assessment is not supported by substantial evidence, which directly affected his finding that she could return to her past

relevant work. She contends that the medical evidence does not support a finding that she could perform the lifting/carrying requirements of light work, nor the frequent manipulative actions bilaterally. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). *See also Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) ("When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.") (*citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)). The undersigned Magistrate Judge finds that the ALJ's RFC assessment in this case has failed to meet these standards as to the claimant's physical impairments.

Here, the ALJ ignored consistent evidence in the record that the claimant had lifting restrictions of ten pounds or less, both prior to and after the alleged onset date. Furthermore, the ALJ wholly failed to address the claimant's right shoulder impairment and how it was accounted for in the RFC, *i. e.*, a total lack of reaching limitations. This is particularly troubling given his finding that the state reviewing physician opinions—finding that she was limited in right overhead reaching—were persuasive even though he declined to include reaching limitations in the claimant's RFC without explanation (Tr. 23, 98, 114). However, the undersigned Magistrate Judge agrees that there was no evidence of a further limitation related to handling, fingering, and feeling, despite her carpal tunnel

syndrome. Indeed, Dr. Sudduth indicated no limitations on his "Hand/Wrist Sheet," and Dr. Guthrie likewise indicated she had no significant limitation therefrom (Tr. 770, 913).

The undersigned Magistrate Judge likewise finds no error in the ALJ's finding that the claimant's mental impairments were nonsevere. The evidence reflects no necessary limitations for the claimant's mental impairments (indeed, while the record shows notations related to medication management and situational stressors, the same notes indicate that it was generally well controlled), and the ALJ clearly considered her mental impairments by discussing them at several points at step four and noting how *all* of her impairments informed his RFC assessment. Furthermore, the claimant has pointed to no medical documentation providing further limitations; rather, she asserts that her ongoing medication and reported variations in stress levels should have required additional limitations. Because she points to no evidence other than her own assertions, the undersigned Magistrate Judge declines to find an error as to the ALJ's findings related to the claimant's mental impairments. *Cf. Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow' gait might adversely affect his ability to perform the standing and walking requirements of light work is not supported by any authority.").

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a) & 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by

considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b) & 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c) & 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2) & 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3) & 416.920c(b)(3).

  In this case, the ALJ thoroughly summarized the opinion from Dr. Guthrie, but erred in the analysis. The regulations discussed above require the ALJ to explain how persuasive he found the medical opinions he considered, and as part of that explanation, also require him to specifically discuss the supportability and consistency factors. *See* 20 C.F.R. §§ 416.920c(b), 416.920c(c). The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting

explanations." 20 C.F.R. § 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. § 416.920c(c)(2).

Here, the ALJ failed to meaningfully apply these factors at all to Dr. Guthrie's opinion and erred in purporting to find the state reviewing physician opinions persuasive while ignoring specific additional limitations as to overhead reaching. As to Dr. Guthrie, he found that the opinion was inconsistent with other unspecified opinions in the record and inconsistent with the claimant working full-time in 2017. However, this ignores evidence in the record that the claimant was working at a light duty level for at least some of this time *due to her impairments* and that her full-time work pre-dates the alleged onset date, while also failing to account for worsening of symptoms. Furthermore, while Dr. Sudduth only reported his findings without offering an opinion, it is unclear how the claimant can perform the full sitting/standing and lifting/carrying requirements of light work in the context of her repeatedly documented reduced range of motion of the right shoulder *and* lumbar spine, as well as the lifting restrictions in the record. It was error for the ALJ to "pick and choose" his way through the evidence in this record in order to avoid finding the claimant disabled. *See Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").

The claimant next argues that the ALJ failed to properly assess her subjective complaints when he found them inconsistent with the record. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[4] Tenth Circuit precedent aligns with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (*citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[5] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ

---

[4] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[5] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna*) and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). The undersigned Magistrate Judge agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted].

The claimant contends, *inter alia*, that the ALJ failed to consider the factors set forth above when evaluating her subjective statements and the undersigned Magistrate Judge agrees. Although the ALJ examined the evidence of record and outlined the appropriate process for evaluating the claimant's pain and other symptoms in his decision, he did not mention or discuss any of the factors set forth in SSR 16-3p and 20 C.F.R. §§ 404.1529(c)(3), and further failed to properly apply those factors to the evidence. Here, the ALJ simply stated that unspecified medical evidence presented at the administrative hearing showed "a significant improvement in response to treatment," but failed to specify which impairments and what improvements she made in functional terms. And as stated above, the ALJ appeared to cite evidence favorable to his conclusions, *i. e.*, the state reviewing physician opinions, while ignoring evidence such as lifting and range of motion limitations. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.") (*citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)). This error appears to have additionally affected the ALJ's RFC assessment, and is not harmless.

Finally, because the ALJ failed to properly assess the claimant's RFC, this likewise affected his step four finding that the claimant could return to her past relevant work, and any such finding should be reevaluated on remand. Because the ALJ failed to properly evaluate the evidence available in the record, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis of *all evidence* in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform in light of the entirety of her RFC, and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 26th day of August, 2022.

_____
**KIMBERLY E. WEST**
**UNITED STATES MAGISTRATE JUDGE**